

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CREATIVELY DISRUPTIVE, LLC, a California limited liability company; ANDY SEELY, an individual; RUSSELL MASTERS, an individual,<br><br>    Plaintiffs,<br><br>v.<br><br>THE NATIONAL INCORPORATION NETWORK, INC., an entity of unknown form doing business as Form-A-Corp; ADRIAN BRION, an individual; DOES 1 through 50, inclusive,<br><br>    Defendants. | Case No.: 18cv720-WQH-KSC<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Defendants' motion to strike. (ECF No. 9).

## BACKGROUND

In June of 2017, Defendant Brion, on behalf of Defendant National Incorporation Network (NIN), and Plaintiff Seely, on behalf of Plaintiff Creatively Disruptive (Creatively), agreed that Creatively would provide certain marketing and website services to NIN. (ECF No. 1 at 16–27). The parties dispute the scope of the agreed-upon services

1

and whether the services were adequately provided or paid for. (ECF No. 1 at 4–6; ECF No. 9 at 13–14). This dispute gave rise to the communications at issue in this case.

Plaintiffs allege that Defendant Brion and Plaintiff Masters exchanged emails regarding the services from November of 2017 until March 5, 2018, when Brion requested a refund. (ECF No. 1 at 5–6). Plantiffs allege that Brion subsequently threatened Plaintiffs through voicemail and text message; submitted negative reviews regarding Creatively on its Facebook page, on Ripoffreport.com, and with the Better Business Bureau (BBB); and arranged for others to submit negative reviews on Creatively's Facebook page. *Id.* at 8–9. Plaintiffs allege that this course of conduct caused business losses and emotional distress. *Id.* at 9.

The contents of the Facebook, Ripoffreport.com, and BBB reviews by Brion and others are at issue in this this motion. (ECF No. 9 at 5–6). The parties agree that Brion posted the following review on Creatively's Facebook page:

> This company has taken $4,400 from my company to do some webwork. They have delivered nothing but excuses and garbage unusable templates and are refusing to refund our money despite not producing any of what we contracted to. They have a fake 100% Satisfaction Guarantee that doesn't exist. Once they take your money, that's all they care about.
> Keep an eye out for them on RIPOFFREPORT.
> DO NOT DO BUSINESS WITH THIS COMPANY.

(ECF No. 1 at 53; ECF No. 9 at 5 n.3). The parties agree that Brion posted the following report on Ripoffreport.com:

> DO NOT DO BUSINESS WITH Creatively Disruptive LLC.
> The only thing they are creative at is conning you out of your money and making excuses.
> I contracted with Russell Masters at Creatively Disruptive LLC on June 17th of 2017. They asked for a period of time to review our current website and about a month later had returned with a plan to fix some of our websites current issues and build out an order system for us with some upgrades. Ever since then it has been nothing but excuses and explanations as to why the project is still not done. I have repeatedly asked for a refund of the

2

> $4,400.00 that we have paid them and they have refused. At this time they are in breach of our contract and their false claim of having a 100% Satisfaction Guarantee is just more of the scam. They are not capable of delivering what they promise and are just out to scam you out of your hard earned money.

(ECF No. 1 at 57; ECF No. 9 at 6 n.4). The parties agree that Brion submitted the following complaint to BBB:

> I contracted with Russell Masters at Creatively Disruptive LLC on June 17th of 2017. They asked for a period of time to review our current website and about a month later had returned with a plan to fix some of our websites current issues and build out an order system for us with some upgrades. Ever since then it has been nothing but excuses and explanations as to why the project is still not done. I have repeatedly asked for a refund of the $4,400.00 that we have paid them and they have refused. At this time they are in breach of our contract and their false claim of having a 100% Satisfaction Guarantee. It is clear that this company knowingly solicited business on Facebook and the Internet without the ability to deliver the work they are contracting to do.

(ECF No. 1 at 60; ECF No. 9 at 6 n.5).

On April 12, 2018, Plaintiffs filed a Complaint against all Defendants for breach of contract, defamation, and intentional interference with prospective economic relations. Plaintiffs also claim conspiracy, assault, and intentional infliction of emotional distress against Mr. Brion. (ECF No. 1). On July 3, 2018, Defendants filed a motion to strike the defamation, intentional interference with prospective economic relations, and conspiracy claims on the grounds that they involve conduct protected by California's anti-SLAPP statute. (ECF No. 9). Defendants request attorneys' fees and costs for the motion. *Id.* On July 23, 2018, Plaintiffs filed a response in opposition, also requesting fees and costs. (ECF No. 68). On July 26, 2018, Defendants filed a reply. (ECF No. 24).

## DISCUSSION

California Code of Civil Procedure section 425.16 (section 425.16) instructs a court to strike a plaintiff's claim if the underlying allegations arose from the defendant's exercise of free speech, and if the plaintiff cannot show a probability of success on that claim. Cal. Code Civ. Proc. § 425.16(b)(1); *see also Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206 (9th Cir. 2005) (explaining that California anti-SLAPP motions apply in federal court); *Wilcox v. Superior Court*, 33 Cal. Rptr. 2d 446, 454 (Cal. Ct. App. 1994). The California Supreme Court has implemented a two-step approach to a claim under section 425.16. *Baral v. Schnitt*, 376 P.3d 604, 617 (Cal. 2016). First, "the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them." *Id.* The defendant must demonstrate that "relief is sought based on allegations arising from activity protected by the statute." *Id.* If that standard is met, the second step applies—"the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." *Id.*

### I. Protected Activity

Defendants move the Court to strike the defamation, intentional interference with prospective economic relations, and conspiracy claims because they are premised upon communications that qualify for section 425.16 protection. (ECF No. 9 at 2). Defendants contend that Brion's Facebook, Ripoffreport.com, and BBB communications were in exercise of his free speech rights in connection with a matter of public interest, consumer protection information. (ECF No. 9 at 9–10).

Plaintiffs contend that the alleged conduct is not protected because "it was not done in connection with a public issue or an issue of public interest," and that any protected activity is "merely incidental" to unprotected activity (ECF No. 19 at 7–8). Plaintiffs also contend that the alleged text messages and voicemails from Brion are true threats not protected by the First Amendment. (ECF No. 19 at 9).

A defendant bringing a section 425.16 motion has the initial burden of presenting a prima facie case that the suit "arises from any act of [defendant] in furtherance of

4

[defendant's] right of petition or free speech under the United States or California Constitution in connection with a public issue." *Wilcox*, 33 Cal. Rptr. 2d at 452 (quoting Cal. Code Civ. Proc. § 425.16(b)). Under section 425.16, an act in furtherance of a person's right of petition or free speech includes a "written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." Cal. Code Civ. Proc. § 425.16(e)(3).

The Court of Appeals applied section 425.16 in the context of consumer complaints to the BBB and on "Internet message boards" in *Makaeff v. Trump University, LLC*, 715 F.3d 254, 260 (9th Cir. 2013). The court found that the plaintiff's letter to the BBB and online posts were protected by the anti-SLAPP statute, and confirmed that "a disgruntled buyer's statements made against a seller" are protected even if "they 'relate solely to her private concerns.'" *Id.* at 262–63 (quoting *Paradise Hills Assocs. v. Procel*, 1 Cal. Rptr. 2d 514, 522 (Cal. Ct. App. 1991)). The court found such communications "constituted consumer protection information because they were intended as 'a warning'" to avoid the plaintiff's services "and came in the context of information that was 'provided to aid consumers.'" *Id.* at 263 (quoting *Wilbanks v. Wolk*, 17 Cal. Rptr. 3d 497, 508 (Cal. Ct. App. 2004)).

Statements to the BBB are subject to section 425.16 because the BBB's mission is "advancing trust in the marketplace by offering objective and unbiased information about businesses to consumers." *Makaeff*, 715 F.3d at 263; *see also Chaker v. Mateo*, 147 Cal. Rptr. 3d 496, 501–02 (Cal. Ct. App. 2012) (finding "derogatory statements about [the plaintiff] and his business" on Ripoffreport.com and other online fora were of public interest). The statute further extends to statements "made in the context of a request" for the BBB to intercede in a particular dispute. *Makaeff*, 715 F.3d at 263.

However, private disputes unrelated to the public interest are not consumer protection information within the scope of section 425.16; for example, sending allegedly defamatory letters to a limited number of people for the purpose of exacting "personal

revenge." *Wilbanks*, 17 Cal. Rptr. 3d at 508 n.6 (distinguishing *Weinberg v. Feisel*, 2 Cal. Rptr. 4th 1122 (Cal. Ct. App. 2003)).

In this case, the Facebook and Ripoffreport.com communications contain language specifically warning other consumers not to do business with Plaintiffs. (ECF No. 1 at 53, 57; ECF No. 9 at 5 n.3, 6 n.4). The BBB communication is in the context of information "provided to aid consumers," despite the inclusion of information related to the parties' dispute. See *Makaeff*, 715 F.3d at 263. The allegations related to the Facebook, Ripoffreport.com, and BBB communications support Plaintiffs' defamation, intentional interference with prospective economic relations, and conspiracy claims. The Court finds that Defendants have satisfied their burden of showing the defamation, intentional interference with prospective economic relations, and conspiracy claims arose from acts in furtherance of protected activity.[1]

## II. Probability of Prevailing

In the second step, "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." *Baral*, 376 P.3d at 617. The plaintiff must make "a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wilcox*, 33 Cal. Rptr. 2d at 454. The determination is made on the basis of the pleadings, as well as supporting and opposing affidavits stating the facts upon which the liability or defense is based. Cal. Code Civ. Proc. § 425.16(b)(2). While a "plaintiff need not produce evidence that he or she can recover on every point urged," *Wilbanks*, 17 Cal. Rptr. 3d at 512, pleadings alone are inadequate to demonstrate a prima facie case. The plaintiff must submit admissible evidence to show a probability of prevailing at trial. *Evans v. Unkow*, 45 Cal. Rptr. 2d 624, 629 (Cal. Ct. App. 1995). "[T]he plaintiff's burden of

---

[1] The text messages and voicemails that Plaintiffs identify as true threats excluded from First Amendment protection are beyond the scope of this motion. In this motion, Defendants identify only the Facebook, Ripoffreport.com, and BBB communications as eligible for anti-SLAPP protection. (ECF No. 9 at 2).

6

establishing a probability of prevailing is not high: We do not weigh credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law. Only a cause of action that lacks 'even minimal merit' constitutes a SLAPP." *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 61 Cal. Rptr. 3d 29, 38 (Cal. Ct. App. 2007) (citations omitted).

### A. Defamation

To prevail on a defamation claim under California law, a plaintiff must prove (1) a publication that is (2) false, (3) defamatory, and (4) unprivileged, and that (5) has a natural tendency to injure or that causes special damage. *Taus v. Loftus*, 151 P.3d 1185, 1209 (Cal. 2007). The U.S. Constitution also requires plaintiffs who are public figures to prove actual malice to recover on defamation claims. *New York Times v. Sullivan*, 376 U.S. 254, 279–80 (1964).

#### 1. Publication

Publication requires communication of the allegedly defamatory statement "to a third person who understands its defamatory meaning as applied to the plaintiff." *Shively v. Bozanich*, 80 P.3d 676, 683 (Cal. 2003). The statement need not reach the "'public' at large; communication to a single individual is sufficient." *Smith v. Maldonado*, 85 Cal. Rptr. 2d 397, 402 (1999) (citations omitted). Online statements are "a medium of publication." *Obsidian Fin. Grp., LLC v. Cox*, 740 F.3d 1284, 1290 (9th Cir. 2014). Neither party asserts that the Facebook, Ripoffreport.com, or BBB communications do not satisfy the publication element. Plaintiffs provide copies of Defendants' Facebook, Ripoffreport.com, and BBB statements. (ECF No. 1 at 53–60). The Court finds this element satisfied.

#### 2. Falsity

Defendants contend that Plaintiffs cannot show a probability of prevailing on the defamation claim because the Facebook, Ripoffreport.com, and BBB communications are either true or nonactionable opinions. (ECF No. 9 at 11–16). Plaintiffs contend they can

show a probability of prevailing because the communications state or imply false assertions of fact. (ECF No. 19 at 19).

When assessing falsity, "[t]he key is . . . 'whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact.'" *Overstock.com, Inc.*, 61 Cal. Rptr. 3d at 39–40 (citations omitted). "Even if the speaker states the facts upon which [he or she] bases his opinion, if those facts are either incorrect or incomplete, or if [the speaker's] assessment of them is erroneous, the statement may still imply a false assertion of fact" and be actionable. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18–19 (1990). The Ninth Circuit has defined a three-part test to apply this standard: "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates the impression, and (3) whether the statement in question is susceptible of being proved true or false." *Gardner v. Martino*, 563 F.3d 981, 987 (9th Cir. 2009) (citations omitted).

In *Chaker*, the court found that statements indicating a person "picks up street walkers and homeless drug addicts and is a deadbeat dad" constituted "insulting name calling" but could not support a defamation claim. 147 Cal. Rptr. 3d at 504. The court observed that, on websites inviting "exaggerated and insulting criticisms of businesses and individuals," statements "lack[ing] any specificity as to the time or place" are nonactionable opinions. *Id.* On the other hand, in *Sanders v. Walsh*, the court found certain Ripoffreport.com and other online postings to be "specific factual claims" because they "recited alleged historical facts detailing perjury and fraud" and taking bribes for awarding city contracts. 162 Cal. Rptr. 3d 188, 192, 196 (Cal. Ct. App. 2013) (analyzing statements such as "Fact: Because of the actual lies and fabrication that came out of [the plaintiff and her mother's] mouths that day in court we thought for sure that we had won. But . . . . purgury took place and false evidence was submitted and not followed up" and "Cheryl Sanders in the planning dept. . . . Our residents are tired of our tax dollars being sunk . . . into the friends and family members (sub-contractors) of the employees of the planning

department! How much extra 'under the table' money is being made from our planning dept?????").

In this case, Plaintiffs assert that Defendants' statements convey to third parties that "Plaintiff does not perform its duties under the terms of the contracts" and is "unable to produce useable websites." (ECF No. 1 at 10). Plaintiffs assert the following excerpts from Defendants' statements are false or imply false assertions of fact:

- "delivered nothing but excuses and garbage,"
- "at this time they are in breach of our contract,"
- "produced nothing on contract," and
- "at this time they are in breach of our contract and their false claim of having a 100% Satisfaction Guarantee is just more of the scam. They are not capable of delivering what they promise and are just out to scam you out of your hard earned money."

Defendants' statements include specific dollar amounts, dates, and details regarding the nature of the agreement and communications with Masters. *See* ECF No. 1 at 57; ECF No. 9 at 6 n.4 ("I contracted with Russell Masters at Creatively Disruptive LLC on June 17th of 2017. . . . [T]o fix some of our websites current issues and build out an order system for us with some upgrades. . . . I have repeatedly asked for a refund of the $4,400.00 that we have paid them and they have refused."). Plaintiffs provide declarations from Seely and Masters stating that they "worked diligently at the direction of Defendant for over 5-6 months" and that "Defendant fell behind on his payments under the contract." (ECF No. 19-1 at 2; ECF No. 19-2 at 2).

Plaintiffs have shown prima facie evidence that Defendants made a false statement of fact or stated an opinion implying a false assertion of fact regarding compliance with the contract. The Court does not weigh evidence at this stage; whether Plaintiffs actually delivered any work product or breached the contract is irrelevant for purposes of this motion. *See Wilbanks*, 17 Cal. Rptr. 3d at 511–12 (rejecting the argument that a defendant's evidence could "defeat" the plaintiff's for purposes of defendant's motion to

strike plaintiff's defamation and unfair business practices claims). The Court finds this element satisfied.

### 3. Defamatory; Natural Tendency to Injure or Special Damages

Libel, a form of defamation, "is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45; *see also Barnes-Hind, Ind. v. Superior Court*, 226 Cal. Rptr. 354, 356 (Cal. Ct. App. 1986) ("A corporation can be libeled by statements which injure its business reputation."). "A statement that is defamatory without the need for explanatory matter such as an inducement, innuendo or other extrinsic fact, constitutes 'a libel on its face,'" or libel per se. *Overstock.com, Inc.*, 61 Cal. Rptr. 3d at 39 (quoting Cal. Civ. Code § 45a); *see also Barnes-Hind, Ind.*, 226 Cal. Rptr. at 359–60 ("If . . . a reader would perceive a defamatory meaning without extrinsic aid beyond his or her own intelligence and common sense, then under section 45a . . . there is libel per se.") (internal citation and parenthetical omitted). If a plaintiff adequately alleges and proves a libel per se claim, there is no need to prove special damages; rather, damage to plaintiff's reputation is presumed. *See Barnes-Hind, Ind.*, 226 Cal. Rptr. at 356. "A corporation can be libeled by statements which injure its business reputation." *Id.*; *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1401 (1999) ("In evaluating whether language used is defamatory, courts look not so much [to the allegedly libelous statement's] effect when subjected to the critical analysis of a mind trained in the law, but [to] the natural and probable effect upon the mind of the average reader.") (quotation and citations omitted)). Accordingly, as the defamation claim is presently pled, damage to Plaintiffs' reputation is presumed. *See DiGiorgio Fruit Corp. v. AFL-CIO*, 30 Cal. Rptr. 350, 356 (Cal. Ct. App. 1963) ("[I]f the publication reasonably and naturally has the effect of bringing the business of the corporation into public contempt, and of making it odious in the estimation of those with whom it has business dealing or connections, then the law will presume that the publication was actionable per se without either pleading [or]

proof of special damage. It will be inferred that the publication did injure it in a business way, for it is only in a business way, resulting in pecuniary loss, that a corporation can be damaged by an alleged libelous publication.") (alteration in original; quotation omitted). The Court finds this element satisfied.

### 4. Privilege

Defendants have not raised affirmative defenses related to privilege. The Court finds this element satisfied. *See Davis v. Elec. Arts Inc.*, 775 F.3d 1172, 1177 (9th Cir. 2015) ("[A] defendant that advances an affirmative defense to [anti-SLAPP] claims properly bears the burden of proof on the defense.").

### 5. Public Figures; Actual Malice

There are two types of public figures who must show actual malice to bring defamation claims: (1) "all purpose" public figures, who "occupy positions of such persuasive power and influence that they are deemed public figures for all purposes," *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974); and (2) a "limited purpose" public figure, who has "voluntarily inject[ed] himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Id.* at 351. For private figures, if the "defamation action involv[es] statements of public concern," the plaintiff must show the defendant's statement was at least "negligent or unreasonable." *Gardner*, 563 F.3d at 989 (citing *Gertz*, 418 U.S. at 345 (1974)).

At this stage in the proceedings no party contends that Plaintiffs are public figures, that the statements relate to a matter of public concern, or that actual malice is otherwise applicable. The Court finds this element satisfied. The Court finds Plaintiffs have shown a probability of prevailing on the defamation claim. The Court will deny the motion to strike as to the defamation claim.

### B. Intentional Interference with Prospective Economic Relations

Plaintiffs assert that Defendants intended to disrupt, and have disrupted, its business relationships by submitting, and causing others to submit, negative reviews on social media platforms. (ECF No. 19 at 6). The elements of tortious interference with prospective

11

economic advantage in California are "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional [wrongful] acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008) (alteration in original) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 950 (Cal. 2003)). In *Sybersound*, the court found conclusory allegations of business and economic relationship disruption insufficient to state a claim for tortious interference with prospective economic relations. *Id.*

Plaintiffs allege that Creatively typically brings in four new clients, or $10,000 of business, per month. (ECF No. 1 at 9). Plaintiffs further allege that Creatively signed no new clients in March because of Defendants' actions, and that it has "lost prospective clients and business." *Id.* at 9, 11. Plaintiffs provide declarations by Seely and Masters stating "Substantially all of Creatively Disruptive's business relationships are established, fostered, and satisfied on this platform," and "The conduct of Defendants, and others who have never interacted with Plaintiffs, imply an agreement between them to quickly and immediately harm Plaintiffs and to interfere with their business relationships." (ECF No. 19-1 at 3; ECF No. 19-2 at 3). The declarations do not reference the disrupted business relationships or economic damage alleged in the Complaint. Given the pleadings and evidence related to the remaining elements of the claim, however, the Court cannot find the claim "lacks even minimal merit" at this stage in the proceedings. *See Overstock.com, Inc.*, 61 Cal. Rptr. 3d at 38 (Cal. Ct. App. 2007) (citations omitted) (quotation omitted).

The Court finds that Plaintiffs have shown a probability of prevailing on their intentional interference with prospective economic relations claim. The Court will deny the motion to strike as to the intentional interference with prospective economic relations claim.

### C. Conspiracy

Under California law, the elements of civil conspiracy are "(1) the formation of a group of two or more persons who agreed to a common plan or design to commit a tortious act; (2) a wrongful act committed pursuant to the agreement; and (3) resulting damages." *City of Industry v. City of Fillmore*, 129 Cal. Rptr. 3d 433, 450 (Cal. Ct. App. 2011). Civil conspiracy is not an independent tort. *Id.* "A civil conspiracy, however atrocious, does not per se give rise to a cause of action unless a civil wrong has been committed resulting in damage." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 457 (Cal. 1994) (citations omitted); *see also Berg & Berg Enters., LLC v. Sherwood Partners, Inc.*, 32 Cal. Rptr. 3d 325, 339 (Cal. Ct. App. 2005) ( "[civil conspiracy] is not itself a substantive basis for liability."). "By its nature, tort liability arising from conspiracy presupposes that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty." *Applied Equip. Corp.*, 869 P.2d at 457.

Plaintiffs base their conspiracy claim on the same allegations underlying the defamation and intentional interference with prospective economic relations claims. Plaintiffs provide declarations that "Defendants, and others who had never interacted with Plaintiffs" agreed to harm Plaintiffs' business, (ECF No. 19-2 at 3; ECF No. 19-3 at 3), and "a personal friend" other than Defendant posted on Creatively's Facebook page regarding the dispute between the parties (ECF No. 1 at 62). Plaintiffs have adequately shown a probability of prevailing on the defamation and intentional interference with prospective economic relations claims, providing independent substantive bases for conspiracy liability. Plaintiffs' declarations also reference emotional damage from "fearing for their safety" and a "fear of violence that Plaintiffs felt and the disruption on Plaintiffs' life based on that fear." (ECF No. 19-2 at 2; ECF No. 19-3 at 2). The Court finds that Plaintiffs have shown a probability of prevailing on their conspiracy claim.

### III. Fees

"[A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal. Code Civ. Proc. § 425.16(c). "The Court has

13

18cv720-WQH-KSC

broad discretion in determining the reasonable amount of attorney fees and costs to award to a prevailing defendant." *Metabolife Intern., Inc. v. Wornick*, 213 F. Supp. 2d 1220, 1222 (S.D. Cal. 2002). The fee award must be supported by "substantial evidence." *Id.* "[I]n the context of awarding attorney fees and costs," "the statute 'shall be construed broadly.'" *Id.* at 1224.

A prevailing plaintiff is entitled to "costs and reasonable attorney's fees" in accordance with Section 128.5 if "the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay." Cal. Code Civ. Proc. § 425.16(c). Section 128.5 defines "frivolous" as "totally and completely without merit or for the sole purpose of harassing an opposing party." Cal. Code Civ. Proc. § 128.5(b)(2).

Defendants request $15,600 in fees and costs. (ECF No. 9-1 at 16–17; ECF No. 9-2 at 3–4). Defendants do not prevail on the motion to strike. The Court finds Defendants are not entitled to fees or costs.

Plaintiffs request $13,525 in fees and costs. (ECF No. 19-3 at 2–10). Plaintiffs contend the motion is frivolous because "Defendants' publications were clearly not based on conduct taken in furtherance of Defendants' free speech or petition rights, and the motion to strike is solely intended to cause unnecessary delay." (ECF No. 19 at 21). These contentions are inadequate to support a finding that the motion was frivolous. The Court will deny Plaintiffs' request for fees and costs.

## CONCLUSION

Defendants' motion to strike pursuant to California Civil Code section 425.16 is denied. Defendants' request for attorneys' fees and costs is similarly denied. Plaintiffs' request for attorneys' fees and costs is denied.

IT IS HEREBY ORDERED that the motion to strike is DENIED. (ECF No. 9).

DATED: 10/5/18

WILLIAM Q. HAYES
United States District Judge